J-S11044-21

2021 PA Super 202

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM MOORE, III | : | |
| | : | |
| Appellant | : | No. 477 WDA 2020 |

Appeal from the Judgment of Sentence Entered March 10, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000599-2019

BEFORE:   STABILE, J., KUNSELMAN, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                          **FILED: OCTOBER 12, 2021**

Appellant, William Moore III, appeals from the judgment of sentence imposed after his convictions at a stipulated bench trial for:  persons not to possess, use, manufacture, control, sell or transfer firearms; firearms not to be carried without a license; use of or possession with intent to use drug paraphernalia; and possessing instruments of crime ("PIC").[1]  After careful review, we vacate Appellant's PIC conviction and affirm the judgment of sentence in all other respects.[2]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1), 35 P.S. § 780-113(a)(32), and 18 Pa.C.S. § 907(a), respectively.

[2] On May 3, 2021, this Court issued a memorandum decision vacating Appellant's judgment of sentence and remanding for a new suppression hearing in light of our Supreme Court's decision in **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020), and our decision in **Commonwealth**
*(Footnote Continued Next Page)*

The trial court set forth the following factual background:

Agent Richard Castagna testified that he was conducting mobile surveillance on November 27, 2018 near Farnsworth Avenue and Miller Avenue in the City of Clairton due to a recent rash of shooting incidents and drug complaints. At the time of [Appellant]'s arrest, Agent Castagna was a detective for the City of Clairton Police Department. At the time of trial, Agent Castagna was a narcotics agent for the Pennsylvania Attorney General's Office. While he was conducting surveillance, he observed a black automobile driving up Miller Avenue and turn onto Farnsworth Avenue without its turn signal activated. Agent Castagna then initiated a traffic stop of the vehicle on Madison Avenue. Prior to actually stopping the vehicle, Agent Castagna observed [Appellant] place a backpack (later described as a blue Kenneth Cole Reaction bookbag) behind the driver's seat. Agent Castagna approached the passenger side of the vehicle and Officer Tallie[3] approached the driver's side. Both law enforcement officers smelled a strong odor of marijuana emanating from the vehicle. Both occupants of the vehicle were removed from the vehicle and patted down for officers' safety. The driver, Kelsey Gori, was cooperative and admitted that she had been smoking marijuana. She removed a baggie of marijuana from her bra and gave it to Officer Tallie. The passenger in the vehicle was [Appellant]. Upon being removed from the vehicle and being patted down, [Appellant] refused to identify himself. The officers began searching the vehicle. The officers also observed marijuana "roaches," or burnt marijuana cigarettes, in the vehicle. Soon, [Appellant]'s mother and brother arrived on the scene of the traffic stop. [Appellant] started to walk away from the site of the traffic stop. He was ordered not to leave. [Appellant] became irate and began yelling at the police officers that they could not search his backpack. He told the officers at least three times that they could not search the backpack. [Appellant]'s mother also yelled at the police officers that they could not search the backpack. [Appellant]'s mother was also detained at the scene. As the

_____

***v. Shaw***, 246 A.3d 879 (Pa. Super. 2021). However, upon consideration of the Commonwealth's subsequent application for reargument, we entered an order granting panel reconsideration, withdrawing our prior decision, and directing that the parties file substituted briefs.

[3] Officer Tallie's first name does not appear in the certified record.

officers approached the backpack, [Appellant] left the scene of the traffic stop and entered a residence [on] Madison Avenue.

Officer Tallie then searched the backpack. Inside the backpack was a .45 caliber Springfield Armory pistol, marijuana, ammunition, . . . and ripped baggies used for drug sales.

Trial Court Opinion, 7/15/20, at 1-3. The trial court also concluded that the backpack contained "a knife with a 14-inch blade[.]" *Id.* at 3.

Appellant filed a motion to suppress, and on July 18, 2019, the trial court conducted a hearing on the suppression motion. After accepting briefs and hearing additional oral argument, the trial court denied Appellant's suppression motion on October 16, 2019. The trial court concluded that officers had probable cause to search Ms. Gori's vehicle because "Agent Castagna and Officer Tallie both smelled marijuana emanating from the vehicle[,] observed 'roaches' of marijuana in the vehicle[,]" and had taken possession of marijuana from Ms. Gori that she had concealed on her person. Trial Court Opinion, 7/15/20, at 5. The trial court further determined that the probable cause to search the vehicle also authorized the search of Appellant's backpack within the car, but that, in any event, there existed independent probable cause to search the bag based upon Appellant's actions at the scene, including his uncooperativeness and demands that the bag not be searched. *Id.*

Appellant proceeded to a stipulated bench trial, where he was convicted of the aforementioned charges.[4]  On March 10, 2020, the trial court sentenced Appellant to a 5 to 10 year term of imprisonment, followed by 3 years of probation, on the persons not to possess, use, manufacture, control, sell or transfer firearms charge.   No further punishment was imposed on his remaining convictions.  Appellant then filed a timely notice of appeal.[5]

Appellant now presents the following issues for our review:

> I.    Did the trial court err in denying the suppression motion because police did not have probable cause or exigent circumstances to conduct a warrantless search of the car and the closed backpack in the back seat of the car?

> II.   Was the evidence . . . insufficient to sustain the conviction for [PIC], as the Commonwealth did not prove, beyond a reasonable doubt, that there was a knife in the backpack or that [Appellant] had an intent to use a knife criminally?

Appellant's Substituted Brief at 5 (suggested answers, trial court disposition, and unnecessary capitalization omitted).

Appellant first challenges the denial of his suppression motion.

> In reviewing the denial of a suppression motion, our role is to determine whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.   Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for

---

[4] Appellant was also charged with, but found not guilty of, resisting arrest or other law enforcement.  18 Pa.C.S. § 5104.

[5] Appellant filed his concise statement of errors complained of on appeal on May 29, 2020.  On July 15, 2020, the trial court issued its Pa.R.A.P. 1925(a) opinion.

the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court] are subject to our plenary review.

*Commonwealth v. Yim*, 195 A.3d 922, 926 (Pa. Super. 2018) (citations and internal brackets omitted). Furthermore, our scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing. *Commonwealth v. Fulton*, 179 A.3d 475, 487 (Pa. 2018).

Prior to addressing Appellant's arguments on the merits of the trial court's suppression ruling, we first address the Commonwealth's contention that Appellant has waived any potential claim under the new rule applicable to automobile searches announced by our Supreme Court in *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020). *Alexander* was decided during the pendency of this appeal and overruled the Court's prior ruling in *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014), which had held that the search-and-seizure provision of Article I, Section 8 of the Pennsylvania Constitution provides no greater protection than does the Fourth Amendment of the United States Constitution with regard to warrantless searches of automobiles. *Id.* at 125 (Opinion Announcing Judgment of the Court). The Court in *Gary* thus concluded that, in line with United States Supreme Court

decisions interpreting the Fourth Amendment, the only prerequisite for a warrantless search of a motor vehicle is probable cause to search, with no exigency required beyond the inherent mobility of a motor vehicle. *Id.* at 138.

In *Alexander*, our Supreme Court concluded that the Pennsylvania Constitution affords greater protection to our citizens than the Fourth Amendment of the United States Constitution, noting that "[t]he long history of Article I, Section 8 and its heightened privacy protections do not permit us to carry forward a bright-line rule that gives short shrift to citizens' privacy rights." 243 A.3d at 207-08. Our Supreme Court thereby re-affirmed and reinstated the pre-*Gary* line of cases that required police to have both probable cause and exigent circumstances before conducting a warrantless search of an automobile. *Id.* at 181, 201, 207-09. The Supreme Court instructed that courts "will have to decide, just as they did pre-*Gary*, whether exigent circumstances justified warrantless searches in discrete scenarios, with a focus on the particular facts." *Id.* at 208.

The Commonwealth argues that Appellant cannot claim that the search of his backpack found within Ms. Gori's vehicle was constitutionally infirm under *Alexander* as he did not raise the issue in the trial court or in his concise statement of errors filed pursuant to Rule of Civil Procedure 1925(b). While acknowledging that the application of the automobile exception under *Gary* was the subject of the suppression hearing, the Commonwealth asserts that Appellant did not directly challenge the holding of *Gary* or argue that

exigent circumstances existed either at the suppression hearing or in the Rule 1925(b) statement. The Commonwealth directs our attention to this Court's decision in **Commonwealth v. Grooms**, 247 A.3d 31 (Pa. Super. 2021), where we found that the appellant had waived any claim pursuant to **Alexander** where he only disputed the existence of probable cause and did not raise the issue of exigent circumstances or challenge the continuing validity of **Gary** in the trial court. **Id.** at 37.

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); **see also Zitney v. Wyeth LLC**, 243 A.3d 241, 246 n.7 (Pa. Super. 2020). "Moreover, it is well-settled that issues that are not set forth in an appellant's statement of matters complained of on appeal are deemed waived." **Commonwealth v. Proctor**, 156 A.3d 261, 267 (Pa. Super. 2017) (citation, quotation marks, and brackets omitted); **see also** Pa.R.A.P. 1925(b)(4)(vii).

Where a new principle of law is adopted while a case is pending on direct appeal, an appellant may be entitled to the retroactive application of the new rule so long as the issue was properly preserved for the reviewing court. **Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*).

> [W]here an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.

*Id.* (quoting *Commonwealth v. Cabeza*, 469 A.2d 146, 148 (Pa. 1983)) (emphasis omitted); *see also Commonwealth v. Hays*, 218 A.3d 1260, 1266-67 (Pa. 2019) (reaffirming *Cabeza* and rejecting proposed rule that an argument pertaining to a new rule adopted during the pendency of a direct appeal is preserved if timely raised at the first opportunity after the adoption of the rule).

Upon review, we agree with the Commonwealth that Appellant has waived his argument under *Alexander* that no exigent circumstances were present to justify the warrantless search of his backpack. Appellant did reference the warrant requirement and exigent circumstances in his suppression motion, alleging that police "performed a search of the vehicle without a warrant, [p]robable [c]ause, exigent circumstances or consent." Motion to Suppress, 5/10/19, ¶4. However, at the suppression hearing, Appellant did not raise the issue of exigent circumstances, contend that a warrant was required to search the vehicle, or argue that *Gary* should be overruled; instead, he confined his argument to whether the police had "establish[ed] independent probable cause to search [Appellant's] bag" beyond the odor of marijuana in the vehicle and Ms. Gori's admission that she had been smoking marijuana. N.T., 7/18/19, at 32. Although the automobile exception in *Gary* was mentioned several times by the trial court and the Commonwealth at the suppression hearing, at no point did Appellant's counsel insinuate that the Supreme Court decision was wrongly decided.

Additionally, Appellant's Rule 1925(b) statement wholly failed to raise either the issue of whether the Commonwealth demonstrated exigent circumstances to justify the search of Appellant's bag or the validity of the automobile exception as adopted by ***Gary***. Appellant's Rule 1925(b) statement provided as follows:

> The Trial Court erred in denying the suppression motion because the police did not have independent probable cause to conduct a warrantless search of the closed backpack in the backseat of a car in which [Appellant] was a passenger after the police accounted for the odor of marijuana by discovering roaches in the front center console and marijuana on the driver. ***See Commonwealth v. Scott***, 210 A.3d 359 (Pa. Super. 2019). The illegal search and seizure violated [Appellant's] rights under Article 1 Section 8 of the Pennsylvania Constitution and the 4th Amendment to the U.S. Constitution.

1925(b) Statement, 5/29/20, ¶4.a. As Appellant did not raise an issue with respect to exigent circumstances or challenge ***Gary*** in his Rule 1925(b) statement, the trial court did not address the issue in its Rule 1925(a) opinion. ***See Commonwealth v. Bonnett***, 239 A.3d 1096, 1106 (Pa. Super. 2020) (noting that the Rule 1925(b) statement "is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal"). Appellant also did not raise an argument pertaining to exigent circumstances in his principal brief on appeal to this Court but rather first raised the issue in his reply brief, after ***Alexander*** was decided.

Therefore, aside from a brief reference to the warrant requirement and exigent circumstances in his suppression motion, Appellant did not argue to

- 9 -

the trial court that anything more than probable cause was required to support the vehicle search. Nor did Appellant include any argument in his Rule 1925(b) statement related to exigency, the lack of a warrant for the vehicle search, or the *Gary* automobile exception. This case thus falls in line with *Grooms*, where we declined to address whether exigent circumstances existed to justify a warrantless vehicle search as the appellant "did not contest the application of the automobile exception announced in *Gary*" and did not "address whether exigent circumstances existed to justify the officers' judgment that obtaining a warrant was not reasonably practicable." 247 A.3d at 37 n.9. Instead, the appellant "simply dispute[d] the existence of probable cause itself," *id.* at 37, at the trial court level and therefore, we concluded that he was limited to his probable cause argument on appeal. *Id.* at 37 & n.8; *accord Hays*, 218 A.3d at 1262, 1266-67 (holding that argument premised on *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016), was waived where the defendant only challenged probable cause for vehicle stop in suppression motion and did not argue that subsequent blood draw was involuntary).

In arguing that he did not waive his argument that the police's search of his bag was not supported by exigent circumstances, Appellant refers us to the waiver analysis in the *Alexander* decision itself where this Court rejected the argument that the appellant was required to specifically argue to the suppression court that *Gary* should be overturned in order to preserve that issue for appeal. Appellant contends that the *Alexander* Court found that the

question of whether *Gary* remained good law was preserved when the appellant cited Article 1, Section 8 of the Pennsylvania Constitution to the trial court, the provision which would ultimately form the basis of the Court's decision in *Alexander* to depart from federal motor vehicle exception to the warrant requirement. Appellant argues that he also preserved his appellate arguments here where he cited both the Fourth Amendment and Article I, Section 8 in his suppression motion and in his Rule 1925(b) statement.

However, on close inspection, we are unpersuaded by Appellant's reliance on *Alexander*'s waiver analysis. In *Alexander*, the appellant did not merely cite Article I, Section 8 as here, but he also argued to the suppression court that the state constitutional provision provided broader protection than the Fourth Amendment in the context of a vehicle search. 243 A.3d at 193 n.8. Furthermore, the appellant in *Alexander* argued to the trial court that the officers should have obtained a warrant before searching the vehicle, *id.*, whereas in this matter Appellant's argument at the suppression hearing was confined to the issue of whether the search was supported by probable cause. Moreover, unlike the present case, there is no indication that the appellant in *Alexander* failed to preserve his appellate challenge to *Gary* by omitting the argument from his Rule 1925(b) statement.[6]

_____

[6] Appellant also cites *Shaw*, in which we remanded for further consideration of exigency of a vehicle search in light of *Alexander*; however, we did not address the issue of waiver in *Shaw* and therefore that opinion offers no guidance here. In addition, Appellant and the Commonwealth each cite to
*(Footnote Continued Next Page)*

Accordingly, we conclude that Appellant did not preserve his argument the warrantless search of his bag was unsupported by exigent circumstances as required by *Alexander*.  As this argument was waived, we therefore only address Appellant's challenge to the denial of his suppression motion related to the issue of whether the officers possessed probable cause to search Ms. Gori's vehicle and his bag.

"The level of probable cause necessary for warrantless searches of automobiles is the same as that required to obtain a search warrant." *Scott*, 210 A.3d at 363 (citations omitted).

> Probable cause does not demand the certainty we associate with formal trials.  Rather, a determination of probable cause requires only that the totality of the circumstances demonstrates a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* (citation omitted).  Probable cause is a practical, "fluid concept [] turning on the assessment of probabilities in particular factual contexts [and] not

---

recent unpublished decisions of this Court that address the preservation of exigent circumstance challenges to warrantless automobile searches in cases where *Alexander* was decided while the case was on direct appeal.  *See Commonwealth v. Lowe*, No. 600 WDA 2020, 2021 WL 3259388, at *4 n.5 (Pa. Super. filed July 30, 2021) (unpublished memorandum); *Commonwealth v. Aursby*, No. 901 EDA 2020, 2021 WL 2826473, at *6 (Pa. Super. filed July 7, 2021) (unpublished memorandum); *Commonwealth v. Greene*, No. 545 WDA 2020, 2021 WL 1575456, at *5 (Pa. Super. filed April 22, 2021) (unpublished memorandum); *see also* Pa. R.A.P. 126(b) (noting that unpublished memorandum decisions of the Superior Court filed after May 1, 2019 may be cited for their persuasive value).  While we acknowledge the differing results this Court has reached with respect to the waiver of *Alexander* challenges, we do not find the discussion or analysis in these unpublished decisions particularly instructive on the facts of this case.

readily, or even usefully, reduced to a neat set of legal rules." ***Commonwealth v. Glass***, 754 A.2d 655, 663 (Pa. 2000) (quoting ***Illinois v. Gates***, 462 U.S. 213, 232 (1983)).

Appellant's argument that the police lacked probable cause proceeds in two parts. First, Appellant contends that the search of Ms. Gori's vehicle was unconstitutional under ***Commonwealth v. Barr***, 240 A.3d 1263 (Pa. Super. 2020), ***appeal granted***, 252 A.3d 1086 (Pa. 2021), which held that the odor of marijuana cannot establish *per se* probable cause to conduct a search for contraband following the General Assembly's 2016 enactment of the Medical Marijuana Act ("MMA"), 35 P.S. §§ 10231.101-10231.2110. Appellant argues that the search of Ms. Gori's vehicle here was illegal as officers did not identify any evidence to establish probable cause that there was contraband inside the vehicle aside from the odor of marijuana.

In ***Barr***, Pennsylvania State Police troopers pulled over a car driven by the defendant's wife for a Vehicle Code violation and detected the smell of burnt marijuana upon approaching the vehicle. 240 A.3d at 1269-70. The troopers announced that they intended to search the vehicle based upon the probable cause from the odor of marijuana, whereupon the defendant, who was in the passenger seat of the vehicle, presented a medical marijuana identification card to the troopers. ***Id.*** at 1270-71. After uncovering a firearm and raw marijuana, the defendant was charged with persons not to possess a firearm and marijuana possessory offenses. ***Id.*** at 1269, 1271-72.

The trial court in **Barr** granted the defendant's suppression motion, reasoning that—following the passage of the MMA—the plain smell of burnt or raw marijuana is no longer indicative of an illegal act and therefore the troopers lacked probable cause to conduct their search of the vehicle. **Id.** at 1273, 1283. On appeal, this Court agreed with the trial court that the MMA altered the probable cause analysis with respect to marijuana, but disapproved of the trial court's determination that the odor was wholly irrelevant to a determination of probable cause. **Id.** at 1283-86. Instead, we explained that:

> The odor of marijuana alone, absent any other circumstances, cannot provide individualized suspicion of criminal activity when hundreds of thousands of Pennsylvanians can lawfully produce that odor [following the passage of the MMA]. What it does provide to police is a general, probabilistic suspicion of criminal activity based on the fact that most citizens cannot legally consume marijuana. Thus, it is a factor that can contribute to a finding of probable cause, consistent with prior precedent [], assuming some other circumstances supply more individualized suspicion that the activity is criminal.

**Id.** at 1287; **see also Grooms**, 247 A.3d at 40. As the factual record was inadequate with respect to the other factual circumstances that may have contributed to the troopers' decision to undertake the vehicle search, we remanded for further proceedings on the suppression motion to determine whether other factors in addition to the odor of marijuana established probable cause for the search. **Barr**, 240 A.3d at 1288-89.

Contrary to **Barr**, the suppression record here establishes that at the time the officers initiated their search of Ms. Gori's vehicle, the officers had

probable cause to believe that the occupants of the vehicle had engaged in the unlawful consumption of marijuana. First, unlike in *Barr*, neither Ms. Gori nor Appellant produced a medical marijuana identification card, nor did they indicate that they were certified as patients under the MMA. Rather, upon being questioned about the odor of burnt marijuana coming from her vehicle and before any search took place, Ms. Gori admitted to having smoked marijuana in the vehicle, produced a baggie containing 2.8 grams of fresh marijuana that had been tucked inside her bra, and indicated that there were roaches present in the center console of the vehicle. N.T., 7/18/19, at 6-7, 9, 19-20, 24.

Thus, at the time Detective Castagna and Officer Tallie began their search, they were aware that Ms. Gori and potentially other individuals had recently smoked marijuana in the vehicle and remnants of the smoked marijuana were present in the form of the roaches. Significantly, while the vaporization of marijuana is permitted under the MMA, 35 P.S. § 10231.303(b)(2)(iv), and the odor of vaporized marijuana may be consistent with the smell of burnt marijuana, *see Grooms*, 247 A.3d at 39 n.10; *Barr*, 240 A.3d at 1286 n.10, the MMA provides that it is unlawful to "[s]moke medical marijuana." 35 P.S. § 10231.304(b)(1). As there was indicia that the marijuana was not consumed in accordance with the MMA, the officers here were in possession of the kind of "other circumstances" absent in *Barr* that "suppl[ied] more individualized suspicion that the activity is criminal" and contributed to a finding of probable cause that the vehicle contained

- 15 -

contraband. 240 A.3d at 1287; *cf. id.* at 1286 n.10 (finding as unpersuasive the Commonwealth's argument that the smell of burnt marijuana indicated that marijuana had been smoked in violation of the MMA as the trial court had credited the expert testimony at the suppression hearing that vaporized marijuana produced a similar smell). Therefore, we do not find that the officers' decision to search Ms. Gori's vehicle was improper under *Barr*.

In the second part of his probable cause challenge, Appellant argues that, even if officers could look inside Ms. Gori's vehicle, they did not have independent probable cause to search Appellant's backpack within the vehicle in light of our decision in *Scott*. Appellant contends that, as in *Scott*, officers fully accounted for the smell of burnt marijuana when they found roaches in the center console and when Ms. Gori gave officers the baggie containing 2.8 grams of marijuana. Appellant asserts that officers could only proceed further in their search and open his closed backpack in the back seat if they had probable cause to believe that there was more contraband to be found in the bag. As officers articulated no reason to believe that there was contraband inside of his bag, Appellant maintains that the search was constitutionally infirm and the contents of the search must be suppressed.

In *In re I.M.S.*, 124 A.3d 311 (Pa. Super. 2015), this Court recognized that as our Supreme Court in *Gary* had adopted the federal warrantless automobile search exception, courts in this Commonwealth should also follow United States Supreme Court precedent that authorizes officers to search any container in a vehicle so long as they have probable cause to search the

vehicle generally. *Id.* at 317 (citing *Wyoming v. Houghton*, 526 U.S. 295 (1999)); *see also Commonwealth v. Runyan*, 160 A.3d 831, 837 (Pa. Super. 2017) (under *I.M.S.*, "if [the o]fficer [] had probable cause to search the vehicle at issue for contraband he was also permitted to search any container found therein where the contraband could be concealed, including [the defendant's] purse"). However, in *Scott*, this Court narrowed the authority of law enforcement to search a closed container within a vehicle where the potential illegal activity that afforded the officer probable cause to engage in the search had been accounted for by contraband already collected during the vehicle search.

In *Scott*, officers stopped the defendant's vehicle for a Vehicle Code violation and, upon their approach on foot, smelled the odor of burnt marijuana and saw smoke emanating from the vehicle. 210 A.3d at 361. The officers also observed the defendant put a blunt in the center console of the vehicle. *Id.* The defendant was removed from the vehicle and nothing was discovered on his person when he was patted down. *Id.* The officers then searched the main compartment of the vehicle, discovering the blunt in the center console, a jar containing what was believed to be marijuana in the front passenger door, and a black ski mask. *Id.* The officers proceeded to search the trunk of the vehicle where they found a loaded revolver. *Id.*

The defendant in *Scott* was charged with firearm offenses and moved to suppress the search of the trunk of the vehicle, which the trial court granted. *Id.* at 361-62. This Court agreed with the trial court that, under the

circumstances presented in that case, "the odor of burnt marijuana and small amount of contraband recovered from the passenger compartment of the vehicle did not create a fair probability that the officer could recover additional contraband in the trunk." *Id.* at 365. We noted that there was no indication of the smell of fresh marijuana emanating from the trunk, and the odor of burnt marijuana was consistent with the contraband discovered in the main passenger area of the vehicle. *Id.* at 364. Furthermore, while the defendant did make a furtive movement towards the center console at the time of the stop, there was no indication that the defendant had attempted to, or even had the ability to, access the trunk. *Id.* at 365. We finally noted the omission of any testimony that the officers involved had specialized training to support the belief that additional contraband might have been present in the trunk. *Id.*

While we are cognizant of *Smith*, we conclude that the trial court did not err in finding that Appellant's actions here provided independent probable cause to justify the search of Appellant's closed backpack for contraband irrespective of the marijuana already recovered at the scene. Upon being asked to exit the vehicle to be patted down, Appellant initially became "very irate" with officers, refused to identify himself, and told officers that they could not pat him down. N.T., 7/18/19, at 6, 21, 25. As the search of the vehicle was progressing, Appellant initially walked away from the traffic stop and then returned and "yell[ed]" at the officers that they could not search his bag. *Id.* at 7-8, 28-29. In addition, a large crowd formed around the car, among them

- 18 -

Appellant's mother who also insisted that officers could not search Appellant's bag, leading to her being detained because she was interrupting the police investigation. *Id.* at 8-9. When officers began to search the area of the vehicle where his bag was, Appellant retreated inside a nearby residence located at 1501 Madison Avenue despite being instructed to remain on the scene. *Id.* at 9, 28.

Furthermore, Detective Castagna testified that, while he was following Ms. Gori's vehicle prior to the traffic stop, he saw the individual in the front passenger seat—later determined to be Appellant—move the backpack from his lap or between his legs to the area behind the driver's seat of the vehicle. *Id.* at 8, 27, 29. Moreover, in contrast to **Smith**, Appellant's backpack was located in the backseat of the vehicle behind the driver's seat, not in an inaccessible trunk area. Accordingly, in light of the indicia that marijuana had recently been smoked in the vehicle, the accessible location of the backpack, the fact that Appellant had moved the backpack just prior to the traffic stop, and Appellant's defensive demeanor and flight from the scene indicating consciousness of guilt, we affirm the trial court's conclusion that the officers here were in possession of information that there was a "fair probability that contraband" would be found in Appellant's backpack. **Scott**, 210 A.3d at 363 (citation omitted).

As we have concluded that the trial court properly denied Appellant's suppression motion, we turn to his second appellate issue where he challenges the sufficiency of the evidence with respect to his PIC conviction. Appellant

argues that the Commonwealth failed to prove beyond a reasonable doubt that a knife, the instrument of crime that he was charged with possessing, was found in Appellant's backpack. In the alternative and assuming the Commonwealth established the existence of the knife, Appellant argues that the Commonwealth failed to prove that he intended to use the knife for a criminal purpose.

A challenge to the sufficiency of the evidence presents a question of law and is subject to our plenary review under a *de novo* standard. ***Commonwealth v. Smith***, 234 A.3d 576, 581 (Pa. 2020). When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, were sufficient to prove every element of the offense beyond a reasonable doubt. ***Id.*** "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***Commonwealth v. Wallace***, 244 A.3d 1261, 1274 (Pa. Super. 2021) (citation omitted).

Under Section 907(a) of the Crimes Code, "[a] person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). To convict an individual of PIC, "the Commonwealth has the burden of proving two elements: (1) possession of an object that is an instrument of crime and (2) intent to use the object for a criminal purpose." ***Commonwealth v. Brockington***, 230

A.3d 1209, 1213 (Pa. Super. 2020) (citation omitted). An "instrument of crime" is defined as "[a]nything specially made or specially adapted for criminal use" or "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d).

We agree with Appellant that the Commonwealth did not show that he was in possession of an instrument of crime. In Count IV of the information, the Commonwealth alleged that Appellant committed the PIC offense by "possess[ing] one or more instruments of crime, namely, a 14 inch blade knife, with intent to employ it [] criminally. . . ." Information, 3/4/19. At the non-jury trial, the parties stipulated to the trial record as consisting of the testimony from the suppression hearing, three crime laboratory reports, a Pennsylvania State Police license and certification form, a certification of Appellant's prior convictions, a search warrant for the house Appellant fled to after the firearm was discovered, and a video recording reflecting the events at issue. N.T., 3/10/20, at 7-8, 10-11. The recovery of the knife was not mentioned at the suppression hearing, nor do any of the laboratory reports or any of the other exhibits reference the knife. Similarly, the video recording submitted into evidence does not show the knife recovered from Appellant's backpack.[7]

_____

[7] The affidavit of probable cause supporting the criminal complaint does indicate that a knife was found in Appellant's backpack following the search.
*(Footnote Continued Next Page)*

The Commonwealth acknowledges that the knife was not mentioned in the stipulated suppression motion testimony or exhibits, *see* Commonwealth's Substituted Brief at 50, yet points to the oral argument of Appellant's counsel during the bench trial where the knife was referenced. The Commonwealth asserts that trial counsel was arguing that Appellant was unaware of the firearm in the bag and he had only claimed ownership and protested the search of the bag based upon the knife and marijuana that was also found inside of it. N.T., 3/10/20, at 17-19. The Commonwealth also notes that, at a different point during the bench trial, counsel stated to the trial court that it was not presenting argument to the trial court on the PIC count. *Id.* at 14. The Commonwealth thus argues that the arguments of Appellant's advocate "were in the nature of a concession to the elements of the crime about which he now complains on appeal," and therefore this Court should reject Appellant's sufficiency claim. Commonwealth's Substituted Brief at 60.

We do not find that Appellant, through the actions of his trial counsel, conceded that he was in possession of an instrument of crime. "[I]t is well-settled that arguments of counsel are not evidence." ***Commonwealth v. Puksar***, 951 A.2d 267, 280 (Pa. 2008). The comments by trial counsel concerning the knife were in the nature of oral argument rather than a

---

However, as the Commonwealth acknowledges in its brief, the affidavit of probable cause was not identified as one of the exhibits on which it relied at the stipulated bench trial. ***See*** Commonwealth's Substituted Brief at 54 n.18.

stipulation of the existence of certain facts,[8] and therefore, such statements could not have established a necessary element of the PIC offense.[9] Furthermore, while trial counsel informed the trial court that he was not presenting oral argument as to the PIC charge, this did not act as a waiver of his sufficiency of the evidence challenge to that charge as a defendant may wait until an appeal is filed to raise a sufficiency argument for the first time. *See* Pa.R.Crim.P. 606(A)(7), Comment; ***Commonwealth v. Foster***, 651 A.2d 163, 165 n.5 (Pa. Super. 1994).

Accordingly, we conclude that the Commonwealth did not submit sufficient evidence to prove beyond a reasonable doubt that Appellant was in

---

[8] Indeed, we note that trial counsel did not state in absolute terms that Appellant was in possession of a knife and instead only expressed that it was possible that Appellant was aware of the knife or other contraband in the backpack. N.T., 3/10/20, at 19 ("my client **could** have been aware of the 14-inch blade knife which would justify him objecting to the search of the bag") (emphasis added).

[9] The Commonwealth does not invoke the doctrine of judicial estoppel here, which "prevent[s] parties from abusing the judicial process by changing positions as the moment requires." ***Bienert v. Bienert***, 168 A.3d 248, 255 (Pa. Super. 2017) (citation omitted). We would reject such an argument even if properly raised, however, as judicial estoppel only applies in situations where a litigant prevails on a contrary theory or argument in a prior phase of the litigation. ***See id.*** (under the judicial estoppel doctrine, "a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained") (citation omitted); ***see also Hospital & Healthsystem Association of Pennsylvania v. Commonwealth***, 77 A.3d 587, 596 n.9 (Pa. 2013) (holding that Commonwealth was judicially estopped from arguing that it cannot comply with the remedy sought because it prevailed on the opposite position in opposition to an earlier request for a preliminary injunction).

"possession of an object that is an instrument of crime." **Brockington**, 230 A.3d at 1213 (citation omitted). We thus vacate Appellant's PIC conviction, but otherwise affirm the trial court's judgment of sentence. Because the trial court imposed no further penalty for the PIC conviction, this has no effect on the trial court's sentencing scheme, and no resentencing is therefore required. **See In the Interest of P.S.**, 158 A.3d 643, 652-53 (Pa. Super. 2017).

Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2021