J-S21009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM F. ANDREWS JR. | : | |
| | : | |
| Appellant | : | No. 1375 EDA 2020 |

Appeal from the Judgment of Sentence May 26, 2017
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0003837-2016

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 13, 2022**

William F. Andrews, Jr. appealed *nunc pro tunc* from his aggregate judgment of sentence of thirteen to thirty years of imprisonment imposed after he was convicted of burglary, aggravated assault, criminal trespass, simple assault, and recklessly endangering another person ("REAP").  In this Court, Appellant's counsel filed an application to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  While we agreed with counsel that Appellant's convictions for burglary and REAP were sound, we disagreed with her assessment that challenges to the sufficiency of the evidence to sustain his convictions for aggravated and simple assault and criminal trespass as a

_____

[*] Retired Senior Judge assigned to the Superior Court.

second-degree felony were so clearly devoid of merit to render the appeal wholly frivolous. *See Commonwealth v. Andrews*, 260 A.3d 177 (Pa.Super. 2021) (non-precedential decision at 11, 16). Therefore, we denied counsel's application to withdraw and ordered the filing of an advocate brief. *Id*. at 17. Following the examination of the new briefs, we affirm Appellant's assault convictions, but reverse his criminal trespass conviction and discharge him of that offense.

We begin by revisiting the facts of the case gleaned from the certified record. Appellant's convictions are based upon events of July 2, 2016, at the residence of Robert Imbody, Sr. and his son Troy Imbody ("Mr. Imbody"). Between eleven o'clock and midnight that night, Appellant and two associates went to the Imbody residence with masks, latex gloves, and a pellet gun. At that time, Mr. Imbody was abed in his darkened basement bedroom. By the light of the adjacent laundry room, he saw two men enter through the unlocked screen door at the bottom of steps that led down from open Bilco doors in the back yard.[1]

The men secured bandanas over the lower halves of their faces. The sight of one cocking a pistol caused Mr. Imbody to realize that the men were not friends making an unexpected visit. Mr. Imbody grabbed his machete,

_____

[1] Bilco is a name brand of double doors which are generally placed at the exterior of a house at the foundation level and provide direct access to the basement of a structure via a staircase. They are generically known as bulkhead doors.

which he stored nearby, and waited until one of the skulking figures got close enough that he felt the need to defend himself. He then took a swipe with the machete, severing one intruder's hand. According to Mr. Imbody, that first man then punched him in the face repeatedly and struck him in the back of the head with the gun. The first man next drew the weapon to Mr. Imbody's sternum and fired, then put it to his temple and fired. Thereafter, the other of the two men cut Mr. Imbody on the forehead with the machete before Mr. Imbody was able to flee up the stairs and out the Bilco doors.

Having heard a commotion, Mr. Imbody's father, who had been upstairs, went outside and saw three men in the backyard. The men fled and the senior Mr. Imbody called 911. Police subsequently recovered the severed hand, which was still in the latex glove, from the floor of the basement. Upon contacting local hospitals to inquire about any recent admittees with missing left hands, the police learned that Appellant's cohorts had deposited him outside of a hospital and driven off. Physicians were able to reattach Appellant's hand. Mr. Imbody required the services of a plastic surgeon to repair the machete cut and lost feeling in his head for months and has permanent scarring and inability to grow hair in the area where he had been hit with the gun.

At trial, Appellant testified in his defense that he had been unaware of his comrades' criminal intent in entering Mr. Imbody's dwelling. He claimed that he believed that he was merely there to help recover personal items of

the girlfriend of one of his companions, and that he was still wearing the latex gloves at around midnight from work he had done earlier in the day on boat renovations. Nonetheless, a jury convicted Appellant of the crimes detailed above. This timely *nunc pro tunc* appeal followed. Appellant presents two questions for our determination: (1) "Was insufficient evidence admitted at trial to support a conviction to both aggravated assault and simple assault on the theory of either principle [*sic*] or accomplice liability?" and (2) "Was insufficient evidence admitted at trial to support a conviction to criminal trespass?" Appellant's brief at 3 (unnecessary capitalization omitted).

The following legal principles govern our review. A challenge to the sufficiency of the evidence presents a question of law subject to a *de novo*, plenary review. **See**, **e.g.**, **Commonwealth v. Moore**, 263 A.3d 1193, 1205 (Pa.Super. 2021). We must ascertain

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gilliam*, 249 A.3d 257, 267 (Pa.Super. 2021) (cleaned up).

We begin with Appellant's assault convictions. The relevant section of the aggravated assault statute provides that the crime is committed if one "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). Appellant's simple assault conviction required proof of an attempt to cause, or the knowing, intentional, or reckless actual causation of, bodily injury. *See* 18 Pa.C.S. § 2701(a)(1).

Appellant does not dispute that the Commonwealth proved that Mr. Imbody was the victim of a simple assault and an aggravated assault. Rather, Appellant contests the evidentiary support for a finding that he had any involvement in the attack on Mr. Imbody. *See* Appellant's brief at 20-24. As such, we observe that Appellant was properly found guilty of these offenses if they were "committed by his own conduct or by the conduct of another person for which he is legally accountable, or both." 18 Pa.C.S. § 306(a). Appellant was legally accountable for acting as an accomplice if, "with the intent of promoting or facilitating the commission of the offense, he . . . aid[ed] or agree[d] or attempt[ed] to aid such other person in planning or committing it[.]" 18 Pa.C.S. § 306(c)(1)(ii). "An accomplice's conduct does not have to result in and of itself in the criminal offense, but rather an

- 5 -

accomplice's conduct must, with the intent to promote or facilitate, aid one whose conduct does causally result in the criminal offense." *Commonwealth v. Bridges*, 381 A.2d 125, 128 (Pa. 1977).  Similarly, the accomplice's intent need not be to cause a particular result, only to aid in the principal's commission of the offense.  *See*, *e.g.*, *Commonwealth v. Roebuck*, 32 A.3d 613, 624 (Pa. 2011).

Appellant argues that the Commonwealth failed to establish beyond a reasonable doubt that Appellant was a principal or an accomplice in the assault of Mr. Imbody.  Appellant maintains that, since the assault occurred after Mr. Imbody had severed Appellant's hand, it is unbelievable that Appellant, "after watching his hand fall to the floor, was able to engage the victim and aid in the assault[.]"  Appellant's brief at 24.  Appellant notes that, although Mr. Imbody witnessed only two men enter the basement, both his father and Appellant testified that three men were involved in the incident.  *Id*. at 22. Therefore, the only reasonable explanation is that the events actually happened as Appellant himself testified, namely that Appellant left the bedroom after losing his hand, and the two men Mr. Imbody perceived assaulting him were the other members of the group.  Appellant notes that the Commonwealth could have, but failed to, send the machete for DNA testing to establish who other than Mr. Imbody had wielded it.  *Id*. at 2. Further, because the Commonwealth admittedly offered no motive for the crime to suggest a reason for the assault, and the evidence revealed that

Appellant consistently maintained from his initial interview with police to his testimony at trial, that he thought he was accompanying the two men to aid his nephew in retrieving his girlfriend's property from her ex-boyfriend's house, there was simply nothing to allow the jury to find that he intentionally facilitated the assault by aiding or attempting to aid in its commission. *Id*. at 23-24.

The Commonwealth responds that Appellant's arguments largely challenge the weight, not the sufficiency, of the evidence, a claim that is not properly before this Court. *See* Commonwealth's brief at 5 n.4. The Commonwealth asserts that, examining the evidence in the light most favorable to sustaining the verdict and leaving all credibility determinations in the hands of the jury, the evidence was sufficient to establish that Appellant was a principal or accomplice in the assault. Specifically, the Commonwealth highlights that Mr. Imbody was adamant in his trial testimony that two men entered the basement that night, and both of them participated in the assault, with one punching him in the face several times, pistol-whipping him, and shooting him with the pellet gun, and the other retrieving the dropped machete and cutting him with it. *Id*. at 7-11.

We agree with the Commonwealth. Mr. Imbody initially testified that the punching and shooting was done by the first man he encountered on his left, namely, the one whose hand he severed, and that the machete wound was caused by the second burglar who had been on the right. N.T. Trial,

5/1/17, at unnumbered 48-49. However, he waivered on that point, testifying as follows on cross-examination:

> Q.   And then one swipe and you were able to take somebody's hand off?
>
> A.   As far as I know.
>
> Q.   And that person is the person that continues to shoot you and to fight you?
>
> A.   As far as I know.
>
> Q.   What about the other individuals, what did they do?
>
> A.   Okay.  I believe that person hit me in the head with the machete.
>
>   . . . .
>
> Q.   Okay.  So the person was able to shoot you and punch you as well after you dismembered them?
>
> A.   I can honestly not tell you who was punching me in the face because when you're being punched in the face over 10 times, you see nothing but fists.

*Id*. at unnumbered 57.

However, Mr. Imbody remained adamant that only **two** men had entered his basement that night, and **both** men participated in the assault. *See id*. at unnumbered 40, 41, 51 (indicating that there were two men); *id*. at 42 ("I could blatantly see there was two."); *id*. at 43 ("I have no idea who these two people were.  . . .  [I]t came to the point where they entered my bedroom and split.  One gentlem[a]n, he went to the left, one gentlem[a]n, he went to the right.").

- 8 -

While the testimony of Mr. Imbody's father that he found three men outside the house after the attack and Appellant's lack of a left hand may serve to render Appellant's version of the assault more plausible than that of Mr. Imbody, it is not the place of this Court to weigh evidence. **See Gilliam**, **supra** at 267. Applying our standard of review by assessing the evidence in the light most favorable to the Commonwealth, we must conclude that Mr. Imbody's testimony supports the jury's finding that Appellant participated in the assault of Mr. Imbody, either as the first man who wielded the pellet gun or the second man who used Mr. Imbody's machete. Accordingly, we affirm Appellant's convictions for aggravated assault and simple assault based upon liability as a principal and as an accomplice.

Appellant next contests that the Commonwealth proved each element necessary to sustain his conviction for criminal trespass. The statutory provision at issue provides: "A person commits an offense if, knowing that he is not licensed or privileged to do so, he . . . breaks into any building or occupied structure or separately secured or occupied portion thereof." 18 Pa.C.S. § 3503(a)(1)(ii). **See also** 18 Pa.C.S. § 3503(a)(2) ("[A]n offense under paragraph (1)(ii) is a felony of the second degree."). The statute defines "breaks into" as "[t]o gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access." 18 Pa.C.S. § 3503(a)(3).

Appellant argues that the Commonwealth failed to prove that Appellant broke into the Imbody residence when he walked in through the open Bilco door and unlocked screen door at the bottom of the steps that led down into the basement. *See* Appellant's brief at 18-19. The Commonwealth concedes that Appellant's criminal trespass conviction was not supported by sufficient evidence as to that element. *See* Commonwealth's brief at 1 n.1.

We agree. This Court has expressly held that an unauthorized entry through an unlocked door was insufficient to support conviction for felony criminal trespass. *See Commonwealth v. Reed*, 216 A.3d 1114, 1121 (Pa.Super. 2019). We therefore vacate Appellant's sentence for criminal trespass, reverse that conviction, and discharge him on that count.

In sum, we vacate Appellant's sentence for criminal trespass, reverse that conviction, and discharge him of that crime. We affirm Appellant's remaining convictions. As Appellant's criminal trespass sentence was ordered to run concurrently with sentences for convictions we have affirmed, our ruling does not upset the trial court's sentencing scheme. As resentencing is consequently unwarranted, we affirm Appellant's judgment of sentence in all other respects.

Judgment of sentence affirmed in part and vacated in part. Conviction for criminal trespass reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/13/2022</u>