J-A22032-20

2021 PA Super 26

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH EDWARD GROOMS | : | |
| | : | |
| Appellant | : | No. 71 MDA 2020 |

Appeal from the Judgment of Sentence Entered December 9, 2019
In the Court of Common Pleas of Dauphin County
Criminal Division at No.:  CP-22-CR-0005708-2018

BEFORE:  SHOGAN, J., STABILE, J., and MURRAY, J.

OPINION BY STABILE, J.:                **FILED FEBRUARY 24, 2021**

Appellant Keith Edward Grooms appeals from the December 9, 2019 judgment of sentence entered in the Court of Common Pleas of Dauphin County ("trial court"), following a stipulated bench trial. Appellant was convicted of criminal use of communication facility, possession with intent to deliver ("PWID") a controlled substance (cocaine), possession of a controlled substance (methamphetamine), possession of small amount of marijuana, and possession of drug paraphernalia.[1]  Upon careful review, we vacate the judgment of sentence, reverse the suppression order, and remand this matter to the trial court.

The facts and procedural history of this case are uncontested.  Following the October 8, 2018 warrantless search of a locked and parked vehicle in a mall parking lot, Appellant was charged with the foregoing crimes.  On May 3,

_____

[1] 18 Pa.C.S.A. § 7512(a), and 35 P.S. § 780-113(a)(30), (16), (31)(i), and (32), respectively.

2019, Appellant filed a motion to suppress, alleging that the police lacked probable cause to search. On June 26, 2019, the trial court conducted a suppression hearing, at which the Commonwealth offered only the testimony of Detective Kenneth Platt, Swatara Township Police Department. N.T. Suppression, 6/26/19, at 4. Detective Platt testified that at the time of the incident in question, he was assigned to the department's patrol division, where he worked as a patrolman. *Id.* at 4, 7. He testified about his training and experience in detecting and identifying narcotics. *Id.* at 4-5. Detective Platt recalled that, during his time as a patrolman, he would average 10-15 drug arrests per month. *Id.* at 5. With respect to marijuana, he testified that it was "easily detectable" because of its strong odor. *Id.* at 6. He further testified that based on his training and experience, he was able to distinguish between the odors of fresh and burnt marijuana. *Id.*

> I would say that the – how strong the odor is, the – just how strong the odor is, whether it's fresh, it has a fresh smell to it. Because it's so distinct, it smells like marijuana where when it's burnt it has a different smell to it. . . . [O]ther than the fact it's marijuana, I don't have a good descriptor to give you.

*Id.* at 6-7. Recalling the specific events of Monday, October 8, 2018, which occurred around 5:20 p.m., Detective Platt testified:

> I was working the capacity of a patrolman on that day. Lieutenant Krahling and I met at the Harrisburg Mall to conduct a foot patrol through the mall.[2] It's common practice for us to do foot patrol through the mall parking lots for several reasons, one, the

---

[2] The officers arrived in two marked police cruisers and were attired in full uniform. N.T. Suppression, 6/26/19, at 9.

Harrisburg Mall parking lot is a high-drug area for [sic] us for whether it be use or transactions as well as we make numerous firearms violations arrests in those parking lots, but also as a service to the community. You know, we'll leave notes, Hey, your purse is in plain view or, you know, we've come across children left in the car. So it's common practice for us to walk through that lot – through the lot at the mall.

*Id.* at 7-8, 12. Detective Platt testified that, on the day of and just prior to the incident at bar, he and Lieutenant Krahling had made an arrest for marijuana three rows over from Appellant's vehicle[3] in that parking lot. *Id.* at 8. Thereafter, they walked in the parking lot until they detected an odor of marijuana coming from Appellant's vehicle. *Id.* at 8, 10. Detective Platt described:

[A]s we proceeded west through the parking lot, Lieutenant Krahling was just a little bit ahead of me. When he walked past a black Mercedes Benz R350, kind of like a station wagon looking vehicle, at that time as he walked past, he detected the odor of marijuana in the air. And he called me over and said, Hey, I smell weed over here. And I walked over to it in that area and then began smelling, like, at the seams of the door. So I also detected the odor of fresh marijuana coming from the black Mercedes.

*Id.* at 10-11. Detective Platt relayed that when Lieutenant Krahling initially smelled the odor of marijuana, he was "at the front of the black Mercedes." *Id.* at 11. Upon confirming the odor of fresh marijuana, Detective Platt testified that they shined their flashlights into the vehicle to observe any contraband in plain view. *Id.* at 13. According to Detective Platt, they saw

---

[3] We note that the vehicle was registered to Alisa Holliman, Appellant's wife, who was with Appellant on the day of the incident. *Id.* at 11, 18. For convenience, however, we refer to the vehicle as "Appellant's vehicle."

nothing. *Id.* He further testified that the vehicle was locked. *Id.* at 14. At that point, according to Detective Platt, they retrieved their lockout tool to unlock the vehicle.[4] *Id.* In explaining why they used the lockout tool, Detective Platt testified that "[w]e didn't have anybody near the vehicle or a contact number for the owner of the vehicle, so we utilized it to unlock the vehicle, conduct our search." *Id.* Detective Platt recalled:

> [O]nce the doors were unlocked, the odor of fresh marijuana was stronger. We began searching the vehicle. Lieutenant Krahling was assisting in the search. He started on the passenger side. And in the front storage compartment in front of the cup holder, there was a – so cup holder, part of that there was, like, a little sliding compartment. Inside there, Lieutenant Krahling located two bags that contained marijuana and a marijuana-filled cigar. Their total weight was 7.8 grams to include the bag that it was placed in.

*Id.* at 15. Detective Platt testified that they also recovered a bag containing 18.4 grams of crack cocaine and a bag containing 3.8 grams of ecstasy pills. *Id.* As they were finishing their search, the officers observed two people—a man, later identified as Appellant, and a woman, later identified as Ms. Holliman—"kind of slowly walking up to the vehicle showing interest in what

---

[4] Detective Platt described the lockout tool as

> [a] common tool that we use for people that lock their keys in the car or whatever the case may be. It's a little plastic wedge that you place in the door. And then you have, like, a little air bladder so to speak that you can pump up and it creates separation between the door and the door frame and it allows you to place a long pliable rod in the vehicle and you can hit the unlock button and it unlocks the car door and you're into the car.

*Id.* at 14.

we were doing." *Id.* at 17. According to Detective Platt, Lieutenant Krahling approached them and Appellant, who was in possession of the keys to the vehicle, eventually stated that "anything found in the car was his." *Id.* Specifically, Appellant accepted ownership of the marijuana, crack cocaine, and ecstasy pills recovered from the vehicle and informed the officers that Ms. Holliman "didn't have any knowledge of" the contraband. *Id.* at 18. Finally, Detective Platt testified that, in addition to the contraband, they recovered $1,100.00 in U.S. currency from Appellant's person and seized his cell phone. *Id.* at 18-19.

On cross-examination, Detective Platt conceded that they made the decision to unlock and search the vehicle solely on their detection of the odor of fresh marijuana. *Id.* at 24. He also acknowledged that, effective August 1, 2018, two months prior to the incident in question, dry-leaf marijuana became legal for medical purposes in Pennsylvania. *Id.* at 25. Detective Platt further acknowledged that they only waited for a "few minutes" for the owner of the vehicle to arrive because, in part, their shift was going to be over at 6:00 p.m., it was already past 5:20 p.m., and sometimes it could take hours before an owner returns. *Id.* at 26.

On August 20, 2019, the trial court denied Appellant's suppression motion. In support of the denial, the court issued an opinion, wherein it advanced a *per se*, bright-line rule: an "odor [of marijuana] alone may establish probable cause." Trial Court Opinion, 8/20/19, at 2 (citations omitted). Relying on that *per se* rule, the court concluded that Detective Platt

and Lieutenant Krahling possessed probable cause to conduct a warrantless search of the vehicle when they confirmed an odor of marijuana emanating therefrom.

On October 26, 2019, the case proceeded to a stipulated bench trial, following which the trial court found Appellant guilty of all charged crimes. On December 9, 2019, the trial court sentenced Appellant to an aggregate term of 30 to 60 months' imprisonment. Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents a single issue for our review:

[I.] Did not the court err in denying [Appellant's] motion to suppress when the police effected a warrantless, non[-]exigent entry into his vehicle without [Appellant] present based solely on the odor of marijuana?

Appellant's Brief at 10 (unnecessary capitalization omitted). At the core, Appellant argues that the officers' warrantless search of his vehicle was illegal because they lacked probable cause. In support, Appellant argues that the mere odor of fresh marijuana, without more, was insufficient to sustain a finding of probable cause. Appellant's Brief at 21. Appellant points out that this position is consistent with Pennsylvania case law. Additionally, Appellant contends that to the extent there is a *per se* rule that the odor of marijuana is sufficient to find probable cause, such a rule necessarily has been diluted by the enactment of the Medical Marijuana Act ("MMA") in Pennsylvania.[5] *Id.* at 26. Lastly, Appellant contends that the reasoning set forth in the recent

_____

[5] 35 P.S. §§ 10231.101 et seq.

Supreme Court decision ***Commonwealth v. Hicks***, 208 A.3d 916 (Pa. 2019), should be applied with equal force to this case. ***Id.*** at 28. Citing ***Hicks***, Appellant asserts that, "just as with a firearm, there is simply no justification for the conclusion that the mere odor of marijuana, where it is lawful to possess it, alone should be suggestive of criminal activity." ***Id.*** at 30.

As we have explained:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. Mbewe***, 203 A.3d 983, 986 (Pa. Super. 2019) (quotations and citations omitted). Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial. ***In the Interest of L.J.***, 79 A.3d 1073, 1085 (Pa. 2013).

> Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures by police in areas where individuals have a reasonable expectation of privacy. An expectation of privacy exists if a person has a subjective expectation of privacy that society is willing to recognize as

legitimate and reasonable. Where there exists a reasonable expectation of privacy, Article I, Section 8 and the Fourth Amendment generally require police to obtain a warrant, issued by a neutral and detached magistrate and founded upon probable cause, prior to conducting a search or seizure of a person and/or a person's property, unless one of the few well delineated exceptions apply.

*Commonwealth v. Loughnane*, 173 A.3d 733, 741 (Pa. 2017) (citations omitted). One such exception was the ephemeral automobile exception, recognized by our Supreme Court in *Commonwealth v. Gary*,[6] 91 A.3d 102 (Pa. 2014) (plurality).[7] In that case, the Court held, in accordance with federal law, that police may conduct a warrantless search of a stopped vehicle if they have probable cause to do so, regardless of any exigency beyond the vehicle's inherent mobility. *Gary*, 91 A.3d at 104.

Here, Appellant does not contest the application of the automobile exception announced in *Gary* if the police possessed probable cause to believe

---

[6] During the pendency of this appeal, our Supreme Court overruled *Gary*. In *Commonwealth v. Alexander*, ___ A.3d ___, 2020 WL 7567601 (Pa. filed December 22, 2020), the Court concluded that Article I, Section 8 of the Pennsylvania Constitution "affords greater protection to our citizens than the Fourth Amendment," reaffirming pre-*Gary* decisions that required police to have both *probable cause and exigent circumstances* before conducting a warrantless search of an automobile. *Alexander*, 2020 WL 7567601, at *1, 25.

[7] Then-Justice, now Chief Justice, Saylor joined the opinion announcing the judgment of the court subject to his observations about "inconsistency in the courts' rejection of bright-line rules restraining law enforcement as a means of protecting individual rights, while simultaneously embracing such rules when they facilitate law enforcement." *Gary*, 91 A.3d at 138-39 (Saylor, J., concurring).

that a search of the black Mercedes would yield evidence of a crime.[8]  He

simply disputes the existence of probable cause itself.[9]    As stated,

---

[8] The decision in **Alexander**, **supra**, overruling **Gary**, announced a new criminal rule.  When a United States Supreme Court decision "results in a 'new rule,'" that rule applies to all criminal cases still pending on direct review." **Schriro v. Summerlin**, 542 U.S. 348, 351 (2004) (citing **Griffith v. Kentucky**, 479 U.S. 314, 328 (1987)).  "Case law is clear, however, that in order for a new rule of law to apply retroactively to a case pending on direct appeal, the issue had to be preserved at 'all stages of adjudication up to and including the direct appeal.'" **Commonwealth v. Tilley**, 780 A.2d 649, 652 (Pa. 2001) (citation omitted); **see also Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*) ("To be entitled to retroactive application of a new constitutional rule, a defendant must have raised and preserved the issue in the court below."), **appeal denied**, 121 A.3d 496 (Pa. 2015).  Appellant here did not challenge the **Gary** automobile exception.  Thus, to the extent relevant to the disposition of this appeal, and consistent with **Tilley** and **Newman**, Appellant cannot rely on **Alexander** to challenge the warrantless search of his vehicle.

[9] Because Appellant did not contest the application of the automobile exception announced in **Gary**, which now has been overruled by **Alexander**, he logically had no occasion to address whether exigent circumstances existed to justify the officers' judgment that obtaining a warrant was not reasonably practicable.  Thus, because Appellant did not raise the issue of exigency before the trial court or in his Rule 1925(b) statement, the issue is waived.  **See Commonwealth v. Hill**, 16 A.3d 484, 492 (Pa. 2011) (citing **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998)); Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); **see also** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").  Separately, we would also deem the issue raised, since Appellant only referenced the lack of exigent circumstances in passing for the first time in his question presented, but fails to develop the same in the argument section of his brief.  **In re Jacobs**, 936 A.2d 1156, 1167 (Pa. Super. 2007) (allegation raised in statement of the questions presented but not addressed in the argument section of brief was waived); **Commonwealth v. Long**, 753 A.2d 272, 278–79 (Pa. Super. 2000) (a contention set forth in defendant's statement of questions involved but there was no "argument with respect to this issue in his brief"; we deemed the issue waived).

"[g]enerally, a warrant stating probable cause is required before a police officer may search for or seize evidence." ***Commonwealth v. Bumbarger***, 231 A.3d 10, 19 (Pa. Super. 2020) (citation omitted), ***appeal denied***, 239 A.3d 20 (Pa. 2020). As our Supreme Court has explained:

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require *only a probability*, and not a prima facie showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Thompson***, 985 A.2d 928, 931 (Pa. 2009) (citations and quotation marks omitted) (emphasis in original). Thus, "[p]robable cause is a practical, nontechnical conception: it is a fluid concept—turning on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules." ***Commonwealth v. Barr***, 240 A.3d 1263, 1274 (Pa. Super. 2020) (citing ***Commonwealth v. Glass***, 754 A.2d 655, 663 (Pa. 2000)). "The level of probable cause necessary for warrantless searches of automobiles is ***the same*** as that required to obtain a search warrant." ***Commonwealth v. Scott***, 210 A.3d 359, 363 (Pa. Super. 2019) (citation omitted) (emphasis added). "[T]he evidence required for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer." ***Id.*** (citation omitted).

With the foregoing in mind, we now turn to Appellant's contention that the trial court erred in determining that an odor of marijuana without more and standing alone is always sufficient to establish probable cause. In reaching its determination, the trial court principally relied on *Commonwealth v. Stoner*, 344 A.2d 633 (Pa. Super. 1975).

In *Stoner*, the defendants were in an automobile lawfully stopped by police for a traffic violation. As an officer reached into the car to secure a pistol that had fallen out of the glove compartment, he noticed a very distinct odor of marijuana about the interior of the vehicle and saw numerous marijuana seeds and leaves on the floor, seats, and clothing in the car. The officer testified he was certain that the odor was too strong to be coming from the small amount of the drug he could see. A warrantless search of the vehicle commenced, whereupon police found approximately 150 pounds of freshly cut marijuana in five burlap bags in the trunk. The officer testified that he considered it necessary to search the car immediately because the owner was not present and there was a possibility that if the car was left unguarded and the search delayed, evidence could have been removed from the car. The officers felt it inadvisable to leave one of their number to guard the car while the four persons in custody were transported to the barracks. They felt it would be dangerous to attempt to transport four suspects with only two police officers. It was felt the most reasonable course of action would be to search the vehicle on the spot and transport the evidence at the same time the appellants and co-defendants were transported. Following the search, the car

was locked and subsequently towed to the police station. The sole argument raised on appeal was that the warrantless search of the trunk of the car while stopped on the turnpike was illegal as being in violation of the Fourth Amendment to the United States Constitution. The appeal did not challenge whether exigent circumstances existed to justify a warrantless search. Rather, the argument focused solely on whether there was sufficient probable cause to believe that the stopped automobile contained contraband.

The **Stoner** court concluded that probable cause existed to search the vehicle based upon the plain view by officers of marijuana seeds and leaves on the floor, seats, and clothing in the car when police leaned in to secure the pistol. The marijuana that was in plain view was sufficient to establish probable cause for the search of the car. **Stoner**, 344 A.3d at 635 (citing **Commonwealth v. Clelland**, 323 A.2d 60 (Pa. Super. 1974)). While we decided that the plain view of this contraband was sufficient to establish probable cause to search, we additionally noted that we did not need to base our decision solely on the evidence in plain view. One of the officers testified that he noted a very strong odor of marijuana coming from inside the car and that this was similar to standing in the center of a field of marijuana. He was able to provide this testimony based upon the fact he previously stood in a field of marijuana while serving as a Military Policeman in Vietnam and that freshly cut marijuana emits a stronger odor than does dried marijuana. Relying upon precedent from the United States Supreme Court, we too concluded that probable cause to search also might exist based upon odors,

so long as it is first established that the officer is lawfully in the place where the search is conducted. We concluded it would have been totally unreasonable for the police to lock up the car and leave it along the turnpike when they knew by "plain smell" that much more contraband than was visible was secreted in the car.

As can be observed, our decision in *Stoner* was not based upon a bright line rule that an odor alone is sufficient to establish probable cause to search. Our affirmance of the suppression denial was based upon the "plain view" doctrine after it was established police were lawfully inside the vehicle. To the extent *Stoner* alternatively endorsed that a "plain odor" *alone* is sufficient to justify a warrantless search for marijuana, that holding now has been called into question based upon the passage of the MMA. When *Stoner* was decided, all forms and uses of marijuana were illegal. With the passage of the MMA, the use of marijuana in specified forms is now legal for medicinal use, which may include the vaping of dry leaf marijuana.[10] Since the mere smell of burnt marijuana now does not always establish an illegal use, we recently in *Barr* arrived at the conclusion that while odor certainly may be a contributing factor to establish probable cause to search, odor alone may not always be sufficient.

---

[10] Although dry leaf medical marijuana was available for purchase in this Commonwealth effective August 1, 2018—well before the incident at issue— we noted in *Commonwealth v. Yeager* that vaporizing medical marijuana produces the same odor as burning marijuana. *Yeager*, No. 2036 MDA 2019, 2020 WL 6799113, at *4-5, unpublished memorandum, (Pa. Super. filed November 19, 2020) (citation omitted).

In **Barr**, a case we find instructive and controlling, and not available to the trial court at the time it decided Appellant's suppression motion, we addressed an almost identical issue as that presented in the present appeal. In **Barr**, police conducted a warrantless search of a lawfully stopped vehicle after they detected an odor of marijuana emanating from the vehicle. We examined whether the odor of marijuana may provide police with probable cause to search a motor vehicle from which the odor emanates when a substantial number of Pennsylvania citizens can now consume marijuana legally, calling into question the so-called plain smell doctrine. We acknowledged that prior cases in this Commonwealth established that the odor of marijuana might alone be sufficient to establish probable cause for a search in light of the substance's then-universal illegality. Upon review, however, we concluded that the odor of marijuana does not *per se* establish probable cause to conduct a warrantless search of a vehicle. We explained:

> The MMA has clearly altered the underlying factual context in which that probable cause test applies. . . . This much is true: marijuana is a prohibited substance under the [Controlled Substance, Drug, Device, and Cosmetic Act], despite the passage of the MMA. However, it is undisputed that a substantial number of Pennsylvania citizens may now possess and consume marijuana legally pursuant to the MMA. Previously, every instance in which marijuana was detected by smell indicated the commission of a crime. Soon, hundreds of thousands of Pennsylvanians will become potential lawful sources of that same odor. Thus, the strength of the inference of illegality stemming from the odor of marijuana has necessarily been diminished by the MMA in Pennsylvania.

*Barr*, 240 A.3d at 1278. "It is precisely because the police cannot discern lawful from unlawful conduct by the odor of marijuana alone that the police may need to rely on other circumstances to establish probable cause to believe that the possession of marijuana detected by that odor is criminal." *Id.* at 1286. We therefore concluded that the odor of marijuana alone, absent any other circumstances, cannot provide individualized suspicion of criminal activity. *Id.* What the odor does provide is "a general, probabilistic suspicion of criminal activity based on the fact most citizens cannot legally consume marijuana." *Id.* at 1287. Odor is a factor that can contribute to a finding of probable cause, assuming other circumstances supply more individualized suspicion that the activity is criminal.[11] *Id.*

We also agree that *Hicks* lends some support for the conclusion that the mere odor of marijuana does not give rise to probable cause. In *Hicks*, police stopped Hicks' vehicle in a gas station parking lot based on information that he was in possession of a firearm. *Hicks*, 208 A.3d at 922. An officer restrained Hicks' arms and removed his handgun from his holster, and a

_____

[11] We hasten to point out that here, as in *Barr*, we address, pre-*Alexander*, whether the totality of circumstances, including the odor of marijuana, was sufficient to establish probable cause to conduct a warrantless search of an automobile. We did not decide in *Barr*, nor do we here decide, whether an odor of marijuana alone emanating from a *moving* vehicle is sufficient to establish "reasonable suspicion" to allow further investigation into whether a crime has or is being committed, such that after further investigation, the totality of facts ripens into probable cause to search. We do note, however, that despite the passage of the MMA, it still is illegal in Pennsylvania to smoke or vape marijuana while driving. *See Yeager*, 2020 WL 6799113 at *6 (Stabile, J., concurring).

- 15 -

search of the vehicle followed. *Id.* Police later determined that Hicks possessed a valid license to carry a concealed firearm, and he was not statutorily prohibited from possessing a firearm. *Id.* Relevantly, Hicks was not charged with firearms offenses. *Id.* The trial court denied suppression, reasoning that possession of a concealed weapon justifies an investigatory stop to determine whether the individual has a license. *Id.* at 922-23. Ultimately, in evaluating whether carrying a concealed firearm could justify an investigative detention, the Pennsylvania Supreme Court first noted that an individual may legally carry a concealed firearm in public if he is licensed to do so. *Id.* at 926. The Court also noted it is impossible to ascertain an individual's licensing status from his appearance. *Id.* at 937. Following an extensive review of applicable Fourth Amendment jurisprudence, *see id.* at 930-36, the Court concluded that there is "no justification for the notion that a police officer may infer criminal activity merely from an individual's possession of a concealed firearm in public." *Id.* at 936.

In *Barr*, we noted the legal distinction between *Hicks* and cases involving marijuana. "The possession of a firearm is generally legal, with limited exceptions. The possession of marijuana, by contrast, remains generally illegal, but for the limited exception of lawful possession of medical marijuana pursuant to the MMA." *Barr*, 240 A.3d at 1285. Yet, despite this distinction, we explained that the *Hicks* decision was not premised solely on the general legality of a firearm. *Id.* at 1286 (citing *Hicks*, 208 A.3d at 945). The search was not unconstitutional due to the statutory classification of Hicks'

license; it was unconstitutional because the police had no way of determining from Hicks' conduct or appearance that he was likely to be unlicensed and therefore engaged in criminal wrongdoing. Against this backdrop, we pointed out the fact that "police cannot distinguish between contraband marijuana and medical marijuana legally consumed by a substantial number of Pennsylvanians based on odor alone, just as police cannot determine from a person's possession of a concealed firearm that he or she is unlicensed to carry it concealed." *Id.* As a result, "because the police cannot discern lawful from unlawful conduct by the odor of marijuana alone[,] the police may need to rely on other circumstances to establish probable cause to believe that the possession of marijuana detected by that odor is criminal." *Id.*

Instantly, the trial court determined the officer was entitled to rely on the odor of marijuana to conduct a warrantless search of Appellant's vehicle, which was unoccupied, locked, and lawfully parked during business hours in a mall parking lot. Our review of the record does not indicate that the trial court considered—beyond the smell of marijuana—any additional factors in analyzing probable cause. Here, as in *Barr*, we once again conclude that the trial court should have considered Appellant's argument about the effect of the passage of the MMA as a relevant factor in its probable cause analysis.[12]

In sum, and as discussed, the police here detected the smell of marijuana coming from an unoccupied, locked, and legally parked vehicle.

---

[12] Unlike in *Barr*, the suppression record here does not establish whether Appellant possessed a medical marijuana card.

- 17 -

Consistent with **Barr**, the enactment of the MMA, and the rationale set forth in **Hicks**, we conclude that the odor of marijuana alone does not always establish probable cause. Rather, it is a factor that may contribute to a finding of probable cause when assessed under the totality-of-the-circumstances test. The trial court in this case erred in applying a *per se* rule for establishing probable cause. It anchored its conclusion that the police officers possessed probable cause to search Appellant's vehicle—which was unoccupied, locked, and legally parked in a mall parking lot—solely on the odor of marijuana emanating therefrom. Accordingly, we are constrained to vacate Appellant's judgment of sentence, reverse the order denying Appellant's suppression motion, and remand this matter to the trial court for proceedings consistent with this decision. On remand, the trial court shall determine on the existing record and consistent with this Opinion, whether the police officers relied on, or were influenced by, any additional factors beyond the smell of marijuana, to establish probable cause to execute a warrantless search of Appellant's vehicle.

Judgment of sentence vacated. Suppression ordered reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/24/2021