**[J-70-2021] [MO: Baer, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 28 MAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 2347 EDA |
| | : | 2019 dated September 25, 2020 |
| v. | : | Vacating the Order of the Lehigh |
| | : | County Court of Common Pleas, |
| | : | Criminal Division, at No. CP-39-CR- |
| TIMOTHY OLIVER BARR II, | : | 0000279-2019 dated August 2, |
| | : | 2019 and Remanding. |
| Appellant | : | |
| | : | ARGUED: October 27, 2021 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE DOUGHERTY**                                       **DECIDED: December 29, 2021**

Because "the smell of marijuana indisputably can still signal the possibility of criminal activity[,]" I join the majority's central holding "that the odor of marijuana may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search." Majority Opinion at 24. I write separately to elaborate on how, in my view, the smell of marijuana retains salience in the probable cause analysis after the enactment of the Medical Marijuana Act ("MMA"), 35 P.S. §§10231.101-10231.2110. I also write to explain my dissent from the majority's decision to reinstate the trial court's suppression order rather than remand to that court for further consideration.

Notwithstanding the legalization of medical marijuana for qualified patients, there are still several ways in which the smell of marijuana can combine with other factors to supply probable cause for a search. One is that an officer who smells marijuana may

also discover evidence of a violation of the MMA, which, in turn, may establish probable cause to believe a crime has been committed. As the majority correctly explains, "so long as a patient complies with the dictates of the MMA, that person can legally possess and consume various forms of medical marijuana, including the plant itself." Majority Opinion at 24. But the inverse is also true: if an individual does not comply with the MMA, that person cannot legally possess or consume marijuana. In fact, failure to comply with the MMA's terms renders an individual's possession or use of marijuana unlawful and subjects him to criminal liability under the Controlled Substance, Drug, Device, and Cosmetic Act ("CSA"), 35 P.S. §§780-101–780-144. *See* 35 P.S. §10231.304(a) ("Except as provided in [the MMA], the use of medical marijuana is unlawful and shall . . . be deemed a violation of the [CSA]."). Given this, several of the MMA's prohibitions warrant examination, because they highlight several ways in which the smell of marijuana can still signal the possibility of criminal activity. *See generally Commonwealth v. Hicks*, 208 A.3d 916, 954 (Pa. 2019) (Dougherty, J., concurring) ("the legislature has the exclusive power to pronounce which acts are crimes and to define crimes, and it is the elements of those crimes that officers must consider when determining whether" the requisite cause exists) (internal quotations, brackets, and citation omitted).

Section 10231.304(b)(1) presents the most straightforward example. That section declares it "unlawful" to "[s]moke medical marijuana." 35 P.S. §10231.304(b)(1). So, for example, if an officer smells marijuana emanating from an individual smoking a joint, the MMA would not be implicated; instead, the officer almost certainly would have probable cause to believe the individual has violated Section 780-113(a)(31) of the CSA, 35 P.S. §780-113(a)(31). Even in less clear-cut situations, evidence indicative of smoking (as opposed to vaping), including the presence of paraphernalia such as pipes, bowls, bongs,

rolling papers, etc., may in conjunction with the smell of marijuana give rise to probable cause.

The marijuana's packaging can also be indicative of criminal activity. A condition for the "lawful use of medical marijuana" is that a patient's marijuana "shall be kept in the original package in which it was dispensed." 35 P.S. §10231.303(b)(6). Testimony from the suppression hearing reveals the likely rationale for this obligation:

> On the outside of the box, and this is for any packaging, on the outside of the package you have a label that is generated by the growing processor. It has a barcode on it and that's how we keep track. That's part of the seed-to-sale system. That's how we keep track of the product.

N.T. 7/17/2019 at 192-93; *see also* 35 P.S. §10231.701 (requiring growers, processors, and dispensaries to "implement an electronic inventory tracking system which shall be directly accessible to the [Department of Health] through its electronic database that electronically tracks all medical marijuana on a daily basis"). Regardless of the wisdom of imposing this original packaging requirement, the statute is clear: for marijuana use to be lawful, the patient "shall" keep any unused marijuana "in the original package in which it was dispensed." 35 P.S. §10231.303(b)(6).[1] Thus, where an officer who smells marijuana also observes its packaging (or lack thereof) and there is no barcode or other

---

[1] The trial court plainly was of a different mind on this point. *See, e.g.*, N.T. 7/17/2019 at 101 ("But is this what we're going to do now? . . . Every small amount case where a person has a [medical marijuana] card we're going to say, but it's not properly, you know, in a container?"); *id.* at 178 (asking defense expert if he believed "that in contemplating the legalization of marijuana that perhaps not enough thought was put into what happens if it's not in the right package?"); *id.* at 199-200 (expressing belief that "there is a huge disconnect between the medical/legal professions" because the medical community "did not contemplate that Pennsylvania would be arresting people and charging them for not having marijuana . . . in the proper container"). Respectfully, whether a particular expert or the medical community at large deem the original packaging requirement a wise legislative choice is irrelevant. Since the provision is unambiguous, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. §1921(b).

identifying information that typically appears on the original packaging from a dispensary, that could be enough to establish probable cause.[2]

Beyond the MMA, there is also the Motor Vehicle Code's prohibition on driving under the influence of controlled substances, which includes marijuana. *See* 75 Pa.C.S. §3802(d)(1)(i) and (iii) ("[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle" where "[t]here is in the individual's blood **any** amount of a [ ] Schedule I controlled substance . . . [or] metabolite" of such substance) (emphasis added). This statute clearly indicates that, "despite the passage of the MMA, it still is illegal in Pennsylvania to smoke or vape marijuana while driving." *Commonwealth v. Grooms*, 247 A.3d 31, 40 n.11 (Pa. Super. 2021) (citation omitted). As such, it is not hard to envision a situation where the smell of marijuana could supply an officer with probable cause to believe a driver, rather than a passenger, has violated the law. *See, e.g.*, Pennsylvania District Attorneys Association's Brief at 18 ("[I]f an officer smells an odor of burnt marijuana when approaching a vehicle solely occupied by the driver, that likely means that the driver is smoking marijuana while driving or smoked marijuana shortly before driving.").[3]

---

[2] Another prerequisite for the lawful use of medical marijuana is that "[a] patient or caregiver shall possess an identification card whenever the patient or caregiver is in possession of medical marijuana." 35 P.S. §10231.303(b)(7). Here, appellant presented a valid medical marijuana card to the officers. Parenthetically, though, I observe Section 10231.1103 of the MMA permits the Department of Health to "verify to law enforcement personnel in an appropriate case whether . . . an identification card is valid[.]" 35 P.S. §10231.1103.

[3] More broadly, it remains an open question "whether an odor of marijuana alone emanating from a moving vehicle is sufficient to establish 'reasonable suspicion' to allow further investigation into whether a crime has or is being committed, such that after further investigation, the totality of facts ripens into probable cause to search." *Grooms*, 247 A.3d at 40 n.11 (emphasis omitted).

Turning now to the disposition of this case, preliminarily, I agree with Justice Mundy the applicable "test is not whether the troopers' subjective reason for searching the car surmounted constitutional scrutiny. Rather, an assessment of probable cause is an objective one measured by examining the totality of the circumstances." Concurring and Dissenting Opinion at 1 (citations omitted). I further agree with the Superior Court's conclusion that "other potentially relevant factors were not considered by the trial court, and the court's credibility assessments of the testimony ostensibly establishing those factors are not in the record." *Commonwealth v. Barr*, 240 A.3d 1263, 1289 (Pa. Super. 2020).

For example, as Justice Mundy notes, it appears the trial court "[o]verlooked . . . the fact that officers' suspicions of criminal activity increased after [a]ppellant became hostile, refused to let anyone get out of the car upon request by the officers, and required additional police support to respond to the scene." Concurring and Dissenting Opinion at 2.[4] Although the majority baldly asserts "it is more than reasonable to conclude that the [trial] court implicitly discredited Trooper Prentice's contention that" appellant's behavior was "indicative of criminal activity[,]" Majority Opinion at 29, the record does not support the majority's position. In fact, the trial court carefully explained that the only portion of

---

[4] Specifically, Trooper Prentice testified that appellant

> informed me to "do my job and to just issue me a ticket." From the SHIELD training that I had received I know that when a passenger is taking over a traffic stop and becoming argumentative that there's more than just a traffic violation going on. The other thing that also took place was, Ms. Barr asked me to just write her a ticket and asked me to just move on. Again, another indicator of a criminal incident. And no one of those specifics just determines that it's a criminal matter. It's the totality of the circumstances where they start adding up to lead you to believe that there is some sort of criminal element that's going on.

N.T. 7/17/2019 at 31-32; *see id.* at 29 (explaining appellant was "being argumentative" and "refusing to let [his wife] exit the vehicle").

the testimony it deemed incredible was Trooper Prentice's assertion that he smelled both burnt and dry marijuana emanating from the car. *See* N.T. 7/17/2019 at 61 ("As the factfinder, I'm going to state for the record, as is my responsibility, I am not calling this witness a liar. I'm saying perhaps he is not educated enough on the smells because one smell is going to trump the other."); Trial Court Opinion, 8/2/2019 at 4 n.10 ("Trooper Prentice testified that he could smell the odor of raw and burnt marijuana through the open window when he was at the rear of the vehicle. This Court takes issue with **this** testimony of Trooper Prentice and finds **it** not to be credible.") (emphasis added). I find no basis in the record for concluding the trial court discredited any testimony other than this limited point.

Aside from appellant's behavior, there are other factors that could be relevant to the probable cause analysis that were ignored by the trial court. For one, Trooper Prentice testified he observed the car after midnight pull out of a particular apartment complex where "a number of stolen gun and [drug] cases originate from[.]" N.T. 7/17/2019 at 14. As well, Trooper Prentice pointedly explained that, "[b]ased off of the odor of burnt marijuana [he] didn't know if [the driver] was possibly DUI." *Id.* at 69. And there was the presence of an individual in the backseat of the car who did not present a medical marijuana card yet appeared "dazed and out of it." *Id.* at 29.[5]

Because these potentially relevant factors were not considered by the trial court in their totality, I agree with the Superior Court that "the most prudent course of action is to remand for reconsideration by the trial court under the appropriate standard." *Barr*, 240 A.3d at 1289. I therefore respectfully dissent from the majority's decision to reverse the

---

[5] The officers also discovered loose marijuana on the floor of the car and in a plain Ziploc bag bearing "no reference numbers, no dispensary distributor numbers, nothing." N.T. 7/17/2019 at 35; *see id.* at 81 (explaining the bag had "no markings on it in any way, shape, or form"). However, this evidence appears to have been discovered during the initial search of the interior of the car. *See id.* at 33-34.

Superior Court's remand order and reinstate the trial court's order granting appellant's motion to suppress.

Justice Mundy joins this concurring and dissenting opinion.