J-S44004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NOLAN NATHANIEL BRODIE, JR. | : | |
| | : | |
| Appellant | : | No. 718 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 23, 2019
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001744-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NOLAN NATHANIEL BRODIE | : | |
| | : | |
| Appellant | : | No. 719 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 23, 2019
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001497-2018

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED MARCH 30, 2023**

Nolan Nathaniel Brodie appeals, *nunc pro tunc*, from the judgment of sentence entered following his convictions, at two trial court dockets, of dealing in proceeds of unlawful activities, criminal use of a communication facility, possession of a controlled substance (THC), possession of drug

_____

[*] Retired Senior Judge assigned to the Superior Court.

paraphernalia, and possession of a small amount of marijuana for personal use.[1] On appeal, Brodie raises suppression claims relative to the warrantless search of his vehicle and the validity of search warrants obtained for his car and cell phones. Brodie also challenges the admission of text messages from his phones on the basis that they were not properly authenticated. We conclude Brodie's claims do not merit relief and therefore affirm.

On September 11, 2018, Pennsylvania State Police Trooper Eric Dreisbach was on routine patrol in Lebanon County when he observed a black Ford Taurus with heavily tinted windows and significant damage to the hood. Trooper Dreisbach followed the vehicle and initiated a traffic stop. When Trooper Dreisbach contacted Brodie, he noticed the odor of marijuana. Brodie indicated that he had smoked marijuana in the vehicle the previous day. Based on the odor of marijuana, Trooper Dreisbach asked Brodie to exit the vehicle.

Trooper Dreisbach then performed a pat-down search of Brodie and found a significant sum of U.S. currency. In response to Trooper Dreisbach's questions, Brodie explained the damage to his vehicle had been caused by a recent accident, and he stated there was more money in the car. Brodie also admitted he was on state parole and did not have a driver's license.

Trooper Dreisbach requested the assistance of a K-9 unit, and after a sweep, the K-9 alerted to the vehicle. Thereafter, Trooper Dreisbach

---

[1] **See** 18 Pa.C.S.A. §§ 5111(a)(1), 7512; 35 P.S. § 780-113(a)(16), (31), and (32).

- 2 -

performed a search of the vehicle. The search revealed a vial of marijuana, a bag containing nearly $39,000.00 in cash, two cell phones, a computer, a tablet, and a duffle bag containing a piece of a vacuum-sealed bag and dryer sheets. Brodie was arrested and transported to the police station. The vehicle was later impounded.

During an interview, Brodie indicated he would not consent to a search of the two cell phones. Trooper Dreisbach obtained search warrants for both cell phones as well as the vehicle. During the second vehicle search, police found several ampules of THC.

While executing the search warrant on the cell phones, police obtained extraction reports referencing user accounts on the phones, as well as text messages, photographs, and videos. Police also monitored Brodie's recorded phone calls from prison and compared those conversations with text message conversations recovered from the cell phones.

At trial court docket number 1497-2018 ("No. 1497-2018"), Brodie was charged with possession of a controlled substance, possession of drug paraphernalia, and possession of a small amount of marijuana for personal use, as well as the summary offenses of driving without a license, obstruction of front windshield, and improper sunscreening. At trial court docket number 1744-2018 ("1744-2018"), Brodie was charged with dealing in the proceeds of unlawful activities and criminal use of a communication facility. The cases were consolidated for trial.

On January 15, 2019, Brodie filed a motion to suppress evidence recovered from the search of his vehicle and cell phones. Brodie argued Trooper Dreisbach lacked probable cause to conduct the initial traffic stop or perform the first vehicle search. He also claimed the search warrants for the second vehicle search and the cell phones were not supported by probable cause.

The Commonwealth filed a motion *in limine* requesting an evidentiary hearing to address authentication and admissibility of the text message evidence.

The trial court conducted joint hearings on the motion to suppress and the motion *in limine*. At the conclusion of the second hearing, the trial court indicated it was clear on the issue of suppression and authentication of the cell phone ending in 7817 ("Cell Phone 1"). However, the trial court directed the parties to file briefs concerning the authentication of the cell phone ending in 5031 ("Cell Phone 2").[2] On June 4, 2019, the trial court entered an order

_____

[2] In its memorandum of law, the Commonwealth referenced statements Brodie made during the recorded prison calls about owning Cell Phone 2, text message conversations about a car accident, and similar conversations and contact names included in both phones. The Commonwealth stated Cell Phone 2 contained 106 videos, some of which were of a sexual nature, and 35,695 photographs, including "thousands of photos of Brodie both clothed and unclothed." Memorandum of Law, 5/28/19, at 4 (unnumbered). The Commonwealth attached several enlarged photographs depicting Brodie's face and multiple pages of thumbnail photographs depicting Brodie in various stages of undress.

denying Brodie's motion to suppress and granting the Commonwealth's motion *in limine*.

The matter proceeded to a jury trial on August 21, 2019. At No. 1497-2018, the jury convicted Brodie of possession of a controlled substance, possession of drug paraphernalia, and possession of a small amount of marijuana for personal use. At No. 1744-2018, the jury found Brodie guilty of dealing in proceeds of unlawful activities and criminal use of a communication facility. Additionally, the improper sunscreening charge was withdrawn, and Brodie was found not guilty of driving without a license and obstruction of front windshield.

Following preparation of a pre-sentence investigation report and a hearing, the trial court sentenced Brodie to an aggregate term of 64 months to 17 years in prison, plus fines and the costs of prosecution. Brodie filed a timely post-sentence motion. The trial court denied relief, and Brodie filed an untimely appeal. This Court quashed the appeal after Brodie failed to respond to the rule to show cause on the issues of the appeal's untimeliness and failure to comply with **Commonwealth v. Walker**, 185 A.3d 969, 976 (Pa. 2018) (requiring separate notices of appeal when the order appealed from arises from more than one docket or relates to more than one judgment).

While Brodie's first appeal was pending, trial counsel sought and was granted leave to withdraw from representation. The trial court appointed new counsel, who filed a petition for relief under the Post Conviction Relief Act

("PCRA"),[3] requesting reinstatement of Brodie's direct appeal rights, *nunc pro tunc*. After a hearing, the trial court reinstated Brodie's direct appeal rights. The instant *nunc pro tunc* appeal followed.[4]

> On appeal, Brodie raises the following claims for our review:
>
> 1. Did the trial court err in denying [Brodie's] pretrial motion to suppress the search of his vehicle, the propriety of subsequent search warrants and the search of phones found in [Brodie's] possession[?]
>
> 2. Did the trial court abuse its discretion in granting the Commonwealth's motion to authenticate all text messages found in the cell phones in [Brodie's] possession[?]

Appellant's Brief at 4.

In his first issue, Brodie raises several challenges to the trial court's denial of his motion to suppress. Our Court's standard of review for a suppression issue is deferential to the suppression court's findings of fact, but not its conclusions of law:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are

---

[3] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

[4] Brodie filed a notice of appeal at each trial court docket. This Court *sua sponte* consolidated the cases for review.

erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation, brackets and ellipses omitted).

We will address Brodie's distinct suppression challenges in turn. First, Brodie challenges the warrantless search of his vehicle.[5] Police may conduct a warrantless vehicle search so long as the search is supported by probable cause. *See Commonwealth v. Gary*, 91 A.3d 102, 137-38 (Pa. 2014).[6]

_____

[5] Brodie does not explicitly challenge the vehicle stop on appeal. We nevertheless note Trooper Dreisbach's testimony that he stopped Brodie's vehicle after observing heavily tinted windows and significant damage to the hood of the car. *See* N.T., Pre-Trial Vol. I, 4/10/19, at 6. This Court has held that an officer's observation of heavily tinted windows in violation of 75 Pa.C.S.A. § 4524(e) provides probable cause to support a vehicle stop. *See Commonwealth v. Harris*, 176 A.3d 1009, 1020 (Pa. Super. 2017). Further, the Motor Vehicle Code prohibits operation of a vehicle which violates Department of Transportation regulations or the vehicle is otherwise in an unsafe condition. *See* 75 Pa.C.S.A. § 4107(b)(2). An officer's belief that the hood of a motor vehicle is not properly held together with a double latch system, *see* 67 Pa. Code § 175.77, provides reasonable suspicion for a vehicle stop with an investigative purpose. *See Commonwealth v. Williams*, 125 A.3d 425, 433 (Pa. Super. 2015) (concluding that officer had reasonable suspicion to support a traffic stop after observing appellant driving with the trunk of his car "bouncing up and down," based on Department of Transportation regulations and Section 4107(b)(2) of the Motor Vehicle Code).

[6] We acknowledge that *Gary* has recently been overruled by our Supreme Court's decision in *Commonwealth v. Alexander*, 243 A.3d 177, 181, 207 (Pa. 2020) (holding that warrantless vehicle searches require both probable cause and exigent circumstances). Brodie cites to *Alexander* in his appellate brief and challenges the lack of exigent circumstances. However, "while the
*(Footnote Continued Next Page)*

Probable cause requires consideration of the totality of the circumstances. **See**

**Commonwealth v. Scott**, 210 A.3d 359, 363 (Pa. Super. 2019).

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. …

**Commonwealth v. Grooms**, 247 A.3d 31, 38 (Pa. Super. 2021) (citation and

emphasis omitted); **see also Scott**, 210 A.3d at 363 ("The evidence required

to establish probable cause for a warrantless search must be more than a

mere suspicion or a good faith belief on the part of the police officer." (citation

and brackets omitted)).

During the suppression hearing, Trooper Dreisbach described Brodie's

demeanor during the interaction as "extremely nervous." N.T., Pre-Trial Vol.

---

Supreme Court in **Alexander** announced a new rule of criminal law, defendants are not automatically entitled to the retroactive application of the **Alexander** decision." **Commonwealth v. Arias**, 286 A.3d 341, 347 (Pa. Super. 2022) (citations and internal quotation marks omitted). A defendant must still preserve the underlying issue. Here, the **Alexander** decision was issued after Brodie's trial but before he filed the instant *nunc pro tunc* appeal, and Brodie did not raise this claim before the trial court or in his Pa.R.A.P. 1925(b) concise statement. Therefore, any challenge based on **Alexander** is waived. **See id.** at 348 (concluding appellant failed to preserve a challenge under **Alexander** where he never raised the issue of exigent circumstances with the trial court or in his Rule1925(b) concise statement); **see also** Pa.R.A.P. 1925(b)(4)(vii) (providing that "[i]ssues not included in the Statement … are waived."); Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

I, 4/10/19, at 17; *see also id.* at 18 (opining that Brodie was "looking for an escape route"). According to Trooper Dreisbach, after he removed Brodie from the vehicle and asked whether it contained anything illegal, Brodie looked back toward the car and had difficulty maintaining eye contact. *See id.* at 17-18. Trooper Dreisbach also reviewed Brodie's criminal history and discovered multiple prior offenses. *See id.* at 19. The K-9 then alerted to Brodie's vehicle. *See id.* at 23. Ultimately, Trooper Dreisbach testified that he conducted the warrantless vehicle search based on the odor of marijuana,[7] Brodie's nervousness, Brodie's criminal history and status as a parolee, and the K-9's positive alert. *See id.* at 23-24.

The trial court concluded that, under the totality of the circumstances, Trooper Dreisbach had probable cause to perform a warrantless vehicle search. *See* Trial Court Opinion, 3/9/20, at 5-7. Upon review, we conclude that the trial court's factual findings are supported by the record and its legal conclusions are sound. To be sure, the K-9 alert was itself sufficient to provide

_____

[7] In his brief, Brodie relies in part on *Commonwealth v. Barr*, 266 A.3d 25, 41 (Pa. 2021) (holding that marijuana is no longer *per se* illegal following the enactment of the Medical Marijuana Act ("MMA")), and argues the smell of marijuana was insufficient to justify the search. The *Barr* decision was also issued during the pendency of this appeal, and Brodie did not raise this issue in his Rule 1925(b) concise statement. Nevertheless, Brodie's reliance on *Barr* is misplaced. The *Barr* Court held that "the odor of marijuana may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search." *Id.* Trooper Dreisbach did not exclusively rely on the odor of marijuana to support the search. Moreover, Brodie admitted to smoking marijuana in the vehicle, conduct which is not permitted under the MMA. *See* 35 P.S. § 10231.304(b).

probable cause. *See Commonwealth v. Green*, 168 A.3d 180, 187 (Pa. Super. 2017). The K-9 alert, in combination with the additional circumstances, provided probable cause to search Brodie's vehicle. *See Commonwealth v. Moore*, 263 A.3d 1193, 1203 (Pa. Super. 2021) (concluding that vehicle search based on the smell of marijuana was not improper where there were indicia the marijuana was not consumed in accordance with the MMA, including appellant's admission to smoking in the vehicle). Accordingly, Brodie is not entitled to relief on this claim.

Next, Brodie contends the search warrants for a second search of his vehicle and his cell phone were not supported by probable cause. Search warrants must be supported by probable cause. *See Commonwealth v. Leed*, 186 A.3d 405, 413 (Pa. 2018).

> [T]he issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits. Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted. The affidavit of probable cause must provide the magistrate with a substantial basis for determining the existence of probable cause.

*Id.* (citations and quotation marks omitted).

In support of his claim, Brodie simply restates his argument that the vehicle search was illegal and adds that the warrants obtained as a result of the first search must also be invalid. Brodie does not otherwise develop this claim for review. He fails to identify relevant case law beyond general citations

to the most general warrant requirements, nor does he point to any language in the affidavits of probable cause supporting the warrants. *See* Pa.R.A.P. 2119(a) (providing an appellant's argument must be developed with discussion and citation of relevant authorities); *see also Commonwealth v. McMullen*, 745 A.2d 683, 689 (Pa. Super. 2000) (stating that "[w]hen the appellant fails to adequately develop his argument, meaningful appellate review is not possible." (citation omitted)).

Moreover, as we have already concluded, the circumstances of this case justified the trial court's finding that Trooper Dreisbach had probable cause to conduct a warrantless search of Brodie's vehicle. It therefore follows that Brodie's challenge to the search warrant, based on the same argument, must also fail.

In his second claim, Brodie argues the trial court abused its discretion by granting the Commonwealth's motion *in limine* to authenticate text messages on the phones recovered from Brodie. *See* Appellant's Brief at 19-26. Brodie acknowledges that some text messages in Cell Phone 1 were properly authenticated, but argues those messages were not related to drug activity. *See id.* at 21. He also states none of the messages in Cell Phone 2 were authenticated. *See id.* Additionally, Brodie asserts many text messages have not been connected to him as the author-sender. *See id.* Brodie acknowledges the authenticated text messages relate to his ownership of the vehicle, but he argues the messages did not specifically point to his involvement in the possession or sale of drugs. *See id.* at 25.

Rulings on the admissibility of evidence are within the trial court's discretion and will be reversed only for an abuse of that discretion. **See Commonwealth v. Orr**, 255 A.3d 589, 594 (Pa. Super. 2021). "An abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised was either manifestly unreasonable or the product of partiality, prejudice, bias, or ill will." **Id.** at 594-95 (citation omitted).

To authenticate evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). This burden of proof is relatively low. **See Commonwealth v. Bowens**, 265 A.3d 730, 759 (Pa. Super. 2021). "Proof of any circumstances which will support a finding that the writing is genuine will suffice to authenticate the writing." **Id.** (citation omitted); **see also Commonwealth v. Koch**, 39 A.3d 996, 1003 (Pa. Super. 2011), *affirmed by an equally divided court*, 106 A.3d 705 (Pa. 2014) ("Circumstantial evidence may suffice where the circumstances support a finding that the writing is genuine.").[8]

Rule 901(b) provides examples of evidence tending to support authentication of evidence. Such evidence can include testimony by a witness with personal knowledge that the item is what the proponent claims it to be. **See** Pa.R.E. 901(b)(1). Evidence may also be authenticated through its "appearance, contents, substance, internal patterns, or other distinctive

---

[8] Because the Supreme Court's opinion in **Koch** did not garner a majority, the **Koch** decision is not binding on us, and this Court has since continued to apply our 2011 decision. **See Orr**, 255 A.3d at 598.

- 12 -

characteristics … taken together with all the circumstances." Pa.R.E. 901(b)(4); **see also Orr**, 255 A.3d at 595 (applying subsection (b)(4) and considering circumstantial evidence).[9] As this Court has explained, "authentication of electronic communications … requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required." **Koch**, 39 A.3d at 1005.

After a pre-trial hearing on the issue of identification, the trial court determined that the Commonwealth had presented adequate evidence to establish the authenticity of text messages recovered from both cell phones. **See** Trial Court Opinion, 3/9/20, at 7-15. We summarize some of the relevant evidence.

Significantly, Brodie made statements to Trooper Dreisbach indicating his ownership of the phones. Trooper Dreisbach testified that during an interview with Brodie after the vehicle search, Trooper Dreisbach asked for permission to search the phones. **See** N.T., Pre-Trial Vol. I, 4/10/19, at 26. Brodie replied that "he didn't want anyone touching his phones." **Id.** Intercepted prison phone calls also contained statements by Brodie indicating

---

[9] We recognize that Rule 901 has since been revised to include an additional subsection governing the authentication or identification of digital evidence. **See** Pa.R.E. 901(b)(11). Because Brodie's trial took place before the October 1, 2020 effective date of subsection (b)(11), we will not apply it here. We have recognized in recent decisions that the new rule is consistent with **Koch**. **See Orr**, 255 A.3d at 601 n.3; **Bowens**, 265 A.3d at 760 n.18.

he was aware the police had his cell phones. ***See id.*** at 55-57; ***see also*** Trial Court Opinion, 3/9/20, at 9.

Upon executing the search warrant, police obtained extraction reports for the phones. Trooper Dreisbach testified the extraction report for Cell Phone 1 included user account information identifying several email addresses and usernames, many of which included some variation of Brodie's name. ***See*** N.T., Pre-Trial Vol. II, 4/26/19, at 59-61. Trooper Dreisbach also found a text message from Cell Phone 1 referencing a car accident that occurred on the day prior to the stop. ***See id.*** at 66; ***see also id.*** at 83 (admitting as Exhibit 21-H a picture sent by Cell Phone 1 depicting the black Ford Taurus Brodie was stopped in).

Cell Phone 1 and Cell Phone 2 both contained photographs and videos of Brodie, some of which were sexual in nature.

Further, at some time during the vehicle stop, Brodie indicated that he was planning to meet someone at the nearby Hardee's in Myerstown. ***See*** N.T., Pre-Trial Vol. I, 4/10/19, at 20. Cell Phone 1 contained text messages with the Hardee's address, an outgoing message instructing someone to come to Hardee's, and an incoming message stating "I'll just meet you at Hardee's." ***See*** N.T., Pre-Trial Vol. II, 4/26/19, at 63-65, 67.

The parties do not appear to dispute that Cell Phone 1 was more frequently used. However, an outgoing text message from Cell Phone 2 identified it as a new phone number. ***See id.*** at 71; ***see also id.*** at 77-78 (discussing a text exchange between both cell phones and another individual,

with all outgoing messages before August 26, 2018, coming from Cell Phone 1, and all outgoing messages after that date transmitting from Cell Phone 2). Both phones included overlapping contact names and numbers. *See id.* at 79.

Upon review, we discern no abuse of the trial court's discretion under these circumstances. The Commonwealth offered sufficient circumstantial evidence to identify Brodie as the sender of text messages recovered from both phones. *Cf. Koch*, 39 A.3d at 1005. The phones were found in Brodie's vehicle after the traffic stop, and Brodie made statements to Trooper Dreisbach and during recorded prison phone calls indicating his ownership. The two phones contained some identical contacts; conversations across both phones used similar jargon and referred to collecting large sums of money; and pictures and videos of Brodie were recovered from both phones. There is no evidence, nor does Brodie allege, that any other individual used or had access to the cell phone. *See Orr*, 255 A.3d at 601 (concluding text messages were sufficiently authenticated where the cell phone was recovered with appellant's belongings; many of the messages referenced an ongoing custody dispute between appellant and the victim; threatening messages seemingly referred to their children; and appellant was the only person who used the phone); *Bowens*, 265 A.3d at 763 (stating "the Commonwealth proffered a quantum and quality of evidence sufficient to meet the relatively low burden" for authentication, where the phone was found on appellant's person; messages referenced contraband that was seized in the vehicle; and appellant's nickname was confirmed through his social media account, which

he displayed to the officers).[10] Therefore, the trial court did not abuse its discretion by admitting the text messages into evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/30/2023

---

[10] Moreover, contrary to Brodie's assertion that a trial court must authenticate each proffered text message individually, we do not interpret **Koch** as requiring such a time-consuming and grueling analysis, absent at least some evidence another person had access to the phone.